## BROWN *vs.* HARRISON & ROBINSON.

1. A charge by a commission merchant of five per cent., in addition to legal interest, for accepting and advancing the money to pay bills or drafts drawn on him by his customers, if intended merely as a fair compensation for the risk, trouble, and expense incurred, is not usurious; but whether such charge is so intended, or whether it is designed as a cover for usury, is a question for the determination of the jury.

2. In such case, proof of a custom among commission merchants in the place in which the business is conducted, to charge the same rate of commission, is admissible to show the implied agreement between the parties, and the reasonableness of the charge, as a compensation for the risk, trouble, and expense incurred.

3. Before the written statement of one, who was once the clerk or book-keeper of another, can be admitted as evidence against the latter, it must be shown that the former was such clerk or book-keeper at the time the statement was made, and had authority to make it.

Error to the Circuit Court of Lowndes. Tried before the Hon. Geo. W. Stone.

Judge, for the plaintiff in error:

I. The court below erred in the rejection of the evidence offered. The rule is, that when " the principal constitutes the agent his representative in the transaction of certain business, whatever the agent does in the lawful prosecution of that business is the act of the principal; and where the acts of the agent will bind the principal, there his declarations, admissions, &c. will also bind him, if made at the same time and constituting part of the *res gestæ.*"—1 Greenl. Ev. § 113, p. 129-30-31; see also Story on Agency, § 134-5-6-7. The only question or difficulty, then, is this: Was said statement furnished at any time when Salomon was clerk, and consequently authorised to furnish it? It having been proved that he was the clerk, that it was his general duty as such to furnish such statements, and that the statement produced was in his hand-writing, the legal presumption was (and the jury would have been authorised so to infer) that the act was done at a time when it was authorised to be done—there having been shown to be a general authority to do precisely such acts at all times, while he was clerk. The paper or writing then being *relevant*, it should have been per-

Brown v. Harrison & Robinson.

mitted to go to the jury, with a proper charge from the court as to the law, in case they should find from the evidence that the same was not furnished at some period during the clerkship of said Salomon.

II. As to the charge of the court below excepted to, and which affirms the right of commission merchants to charge under a contract or usage two and a half per cent. for accepting, and an additional two and a half per cent. for paying accommodation drafts, it is contended—1. That it would be right and lawful in the commission merchant to charge for *accepting*, (Durham v. Dey, 13 Johns. 40,) and that such charge includes compensation for everything legitimately growing out of the act; this of course includes compensation for payment, if payment has to be made by the merchant, as the risk and contingency of payment by him is the main thing for which he charges the two and a half per cent. on accepting. 2. That the commission merchant, by the act of acceptance, makes the debt his own, for which he is paid as aforesaid; and if he have it to discharge at maturity, he is but paying his own debt, and is not entitled to compensation therefor. 3. That to allow him to recover from the drawer the amount paid for him and legal interest thereon, and the additional sum of two and a half per cent. on the amount paid, would be to permit a recovery of more than the legal rate of interest on an implied assumpsit, which would be sanctioning usury. 4. And that any usage, custom, or contract, which would seek to authorise this, is but a shift or contrivance to avoid the statute of usury, and cannot be upheld.—See the case of Floyer v. Edwards, Cowp. Rep. 112; see also the very learned and interesting opinion of Chancellor Kent, in Dunham v. Gould, 16 Johns. 367, the reasoning in which case applies with full force to this.

III. But independent of the question of usury, there was error in the charge given, because there was no consideration valuable in the law, for the recovery of the two and a half per cent. claimed by the defendants in error for discharging the draft at maturity; it was their own debt—they had already been compensated to make it their own; and the payment thereof could have been coerced out of them by law. Could then a naked usage authorise the recovery of said two and a half per cent.? No custom or usage will be upheld, that is contrary to

law or public policy. It is contrary to law and public policy to give compensation without consideration; therefore defendants in error cannot recover it in this case.

There is no getting around the fact, however, that if this two and a *half per cent.* can be recovered, it is allowing the recovery of more than 8 per cent. on monies paid or advanced by defendants in error for plaintiff in error.

BOLING, for the defendants.

CHILTON, J.—This was an action of assumpsit, brought by Harrison & Robinson against the plaintiff in error, to recover certain monies paid by them for Brown, and for certain commissions which they insisted they had the right to recover.

It appears by a bill of exceptions, that the plaintiffs below were commission merchants of the city of Mobile, and had accepted for the accommodation of Brown a bill of exchange drawn upon them by him for $1756 57, and that Brown had failed to pay the bill at maturity; and there was proof conducing to show that they were compelled to pay the same, to save themselves from protest—Brown not having provided them with any funds to make such payment. The plaintiffs below were allowed to prove, against the defendant's objection, that there was a custom or usage among the commission merchants of Mobile, to charge two and a half per cent. for accepting bills or drafts, and a further sum of two and a half per cent. for advancing the money thereon at maturity, or paying the same in consequence of such acceptance, provided they were not placed in funds by the drawer, at the maturity of the bill; and that the two and a half per cent. so charged was upon the aggregate amount of the bill or draft so accepted or paid. The proof left it doubtful, whether the plaintiffs had advanced the money to Brown himself and retained the bill, or whether it had been negotiated to a third party and had been paid to such endorsee. The plaintiffs were shown to be men of capital, and the evidence showed that it was customary for men of capital, engaged in the business of commission merchants, to charge the above commissions, whether the bill had been negotiated or retained by them.

The court charged the jury, that if they believed the plaintiffs had advanced the money at the time of their acceptance of the

bill, and that said bill had never been negotiated or passed by the defendant to some third person, that in such case the plaintiff could not recover more than the amount advanced with legal interest, notwithstanding a custom may have obtained in Mobile among the commission merchants to the contrary, as in that event such negotiation would amount to a loan of money, and the super-addition of the five per cent. would make the transaction usurious. This charge was acceptable to the defendant, but the court further instructed the jury, that if they believed that said bill had been accepted for the benefit of said Brown, and that the plaintiffs had not advanced the money thereon, until after it had been negotiated by Brown to a third party, to whom such payment was made by the plaintiffs, that then they were entitled, in addition to the amount paid and lawful interest, to recover the two and a half per cent. for accepting, and the same amount for advancing the money to make the payment of said bill, provided the proof showed a contract on the part of said defendant to pay these amounts; or they were permitted to allow these commissions of 5 per cent., if a custom or usage was shown to exist among the commission merchants of Mobile to charge them. This charge was excepted to by the defendant.

The Circuit Court also excluded a written statement, in the hand writing of one Salomon, who was proved to have been the clerk of the plaintiffs in 1846 and 1847, when the bill above alluded to was made, but who had been a dormant partner with plaintiffs since January 1848. This statement was without date, and was not signed by any one. It set forth that the bill above mentioned was given to extend a debt due by draft of defendant on the plaintiffs for one year, and for which extension thirteen per cent. had been added. It was shown, in connection with the offer of this statement, that it was the duty of Salomon to furnish the customers of the house of Harrison & Robinson with such statements of their indebtedness, while he was the book-keeper of said concern, and that the defendant was a customer of said house.

Three points are presented by the assignment of errors, for our consideration. 1. The admission of proof of the custom. 2. The charge of the court in respect to the five per cent. commissions. 3. The exclusion from the jury of the statement of Salomon. We may examine the first two together.

50

1—2. Considering the extent to which the custom has prevailed, of taking commissions for accepting and advancing on bills, drafts, &c., by merchants engaged in the business of the plaintiffs below, the question, which is for the first time presented to this court for its decision, whether it is lawful to charge such commissions, is one of much importance. We have looked into the authorities with anxious solicitude to arrive at a conclusion, which will harmonise with the settled law upon the subject, and if, according to the settled rules of law, such charges are usurious, however extensively they may have prevailed, or however long the custom may have obtained among the merchants in Mobile, to allow and charge them, they must be disallowed, as a custom, which contravenes the settled policy of the State, or the provisions of the statute law, is of no avail whatever. The leading case upon this subject is that of Floyer v. Edwards, Cowper 112; in which Lord Mansfield said, "If the substance (speaking of the negotiation,) is a loan of money, nothing will protect the taking of more than five per cent. It depends principally upon the contract being *a loan*; and the statute uses the words "directly or indirectly." Therefore in all questions in whatever respect repugnant to the statute, we must get at the nature and substance of the transaction; the view of the parties must be ascertained, to satisfy the court that there is a loan and borrowing, and that the substance was to borrow on the one part, and to lend on the other; and where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute." In that case, his Lordship took the distinction between a *bona fide* commercial transaction, and one designed as a mere color to avoid the statute, and while he held that usage could not protect the party from usury, or avoid the statute, yet it went to explain the transaction, and as evidence to show that there was no intention to cover a loan of money. See also the English cases of Barnes v. Fry, 15 Ves. Jr., 120; Auriol v. Thomas, 2 D. & E. 52 ; Carstairs v. Stein, 4 M. & S. 192. In Deforest v. Strong, S Conn. 513, it was agreed that if the plaintiff would lend his name, he should be entitled, if provided with funds to meet the payment, to one half of one per cent.; but if he had to advance the money to make the payment, he should be entitled to a commission of two and a half per cent. It appeared that the latter charge was designed as a fair compensation to the

party for providing for acceptances, which it was the duty of the defendant to pay, and not as a cover for a usurious loan.   It was held that the commissions thus allowed to the plaintiff, who was a commission merchant, were not usurious.   The court said, "the transaction does not purport to be a loan.   The contract is ostensibly a contract for compensation for the trouble and inconvenience of raising money to meet the debt of another," and they rely upon the case of Trotter & Douglass v. Curtis, 19 Johns. Rep. 160, which in principle sustains the view taken. It was, however, a question for the jury to determine under the circumstances in proof, whether the arrangement was or was not a device to avoid the statute of usury.   The same principle was asserted in substance in Hutchinson v. Hosmer, 2 Conn. 341. The whole doctrine is very fully discussed in Ketchum v. Barker et al. 4 Hill 224, where the English authorities are collated, and several of the American decisions are reviewed ; and it was held in that case, that a *bona fide* sale of one's credit by way of guaranty or endorsement, though for a compensation exceeding the lawful rate of interest, is not usurious, if the transaction be unconnected with a loan between the parties—also, that where an excess was received, by whatever name the parties may designate it, it was in general a question for the jury to determine, whether it was really taken as a compensation for touble and expense incurred in good faith, or was mere usury in disguise.   If such charges, under the name of commissions, are designed as a cover for usury, they cannot be recovered; but if intended really and *bona fide* as a  compensation for the risk, trouble,  and expense, on the part of the commission merchant, in accepting and providing funds for the payment of his customer's bill  or draft, then they may be recovered.  But this is a matter peculiarly for the consideration of the jury, as is fully shown by the cases above cited.—See also, Hammett v. Yea, 1 Bos. & Pull. 153; Hutchinson v. Piper, 4  Taunt. 810; Masterman v. Conrie, 3 Camp. 488; Palmer  v. Baker, 1 M. & S. 56; Kent v. Phelps, 2 Day 483; Comyn on Usury, 123, *et  seq.;* 5 Law Lib. 47, *et seq.*   The mere custom to charge these commissions, if contrary to law, could not confer the right, but proof of it was properly admitted, as we before intimated,  to show what the implied agreement of the parties was, and the reasonableness of the charges as a compensation for the risk, trouble, inconvenience,

and expense, attendant upon the negotiation. The charge of the court, which makes the right of the party to recover to depend upon the contract to pay the additional 5 per cent., or on the custom which allowed it, was clearly erroneous, as withdrawing from the jury the material inquiry, whether the transaction was a shift or device to avoid the statute of usury, or whether these commissions were *bona fide* allowed or contracted to be paid as a compensation for the plaintiffs' trouble, risk, inconvenience, &c. incurred in accepting and paying the bill.

3. Upon the remaining point, we think the decision of the primary court correct. Salomon had ceased to be the clerk of the plaintiffs below, before this suit was commenced. It is a sufficient reason, why the statement proved to be in his hand writing should have been excluded, to state that it is not shown to have been made out by him, when he was acting as such clerk and had authority to bind his principal by giving such a statement. The defendant should have shown, in order to make this paper evidence, that, *at the time* of its execution, Salomon, who gave it, was the clerk or book-keeper, with authority from his principal to furnish such statements. For aught that appears in the record before us, his agency may have ceased before he executed it, and in that event, it would not be contended that it was evidence.—See 1 Greenl. Ev., § 113, 8 Metc. Rep. 44.

For the error in the charge of the court, the judgment must be reversed and the cause remanded.