Smith *et al.*, Administrators, *v.* Marvin *et al.*

An agreement is not, it seems, necessarily usurious which, providing for the sale of merchandise by a factor on a commission of five per cent in full of all charges except disbursements, also provides a commission of five per cent on advances made by the factor.

Whether the commission on the advances was merely a cover for an usurious charge for forbearance, is a question of fact, to be settled by further evidence; and proof that such a charge was customary with merchants engaged in similar business, though not controlling, is pertinent on the point of its reasonableness.

If, however, such charge were usurious, the fact that it had been stated in the accounts between the parties, showing the application thereto as payment of the proceeds of sales of the principal's merchandise, and that such account had 'been acquiesced in for two years without objection, will preclude the principal from avoiding the contract in a suit to adjust the final balance between himself and the factor on the entire course of dealing prior and subsequent to the rendering such account.

Appeal from the Supreme Court. This was a suit in Chancery, commenced in 1843, for an accounting between the firms of the complainants' intestates, under the names of Seymour & Wood, and Seymour, Forsyth & Co., and the defendants. The business of the complainants' intestates was that of commission merchants. They received wool and sheepskins from the defendants from 1838 until 1842, and made advances thereon and sold such wool and sheepskins (except some which were unsold at the time this suit was commenced) as commission merchants for the defendants; and they made statements, from time to time, of the accounts between them and the defendants, which they sent to the latter.

The defendants purchased the wool and sheepskins at and near Watertown and Oswego, and, from time to time, consigned the same to the firms represented by the complainants, at Albany, for sale on commission; and on account thereof the defendants drew drafts, from time to time, on such firms, which were accepted and paid by them.

The last of the above mentioned statements sent to the defendants, and which they received, showed a balance due from them on September 5, 1842, of $13,835.10.

After this date and prior to the first day of January, 1843, the original complainants sold wool and sheepskins of the defendants' to the amount of $7,465.58; and when they commenced this suit, in March, 1843, they claimed a balance was due them, from the defendants, of $7,109.58, subject to be reduced by the sale of the wool and sheepskins the complainants had in their possession, belonging to the defendants, which had not been sold, and which the complainants offered, in their bill, to take at the market price, and which they subsequently sold before any accounting was had in the suit.

Among the defences set up in the answer was that of usury, which defence was predicated upon an agreement, dated the 18th day of February, 1840, signed by Seymour & Wood, in the words and figures following, viz:

"Terms. First. On condition we have the selling of all your wool and skins, we will do it at a commission of five per cent, including all charges except such as we pay out.

"Second. We will advance or accept in two-thirds the value of property put in our hands.

"Third. We now advance $2,000, in cash, for 90 days, at 5 per cent commission.

Fourth. No drafts to be made on property, short of

| | | | | | | |
|---|---|---|---|---|---|---:|
| 1 at 3 months, from 20th February, | | | | say | ............ | $1,000 |
| 1 " 4 " | " | " | " . | " | ............ | 2,000 |
| 1 " 4 " | " | 1st March, | | " | ............ | 1,000 |
| 1 " 4 " | " | 15th " | | " | ............ | 1,000 |
| 1 " 4 " | " | 1st April, | | " | ............ | 1,000 |

$6,000

"Fifth. When your drafts fall due (if not put in funds) we are at liberty to sell the property at the market price to meet the same, or if we advance the money to pay the same, charge 5 per cent on such advances.

"February 18, 1840.                         "S. & Wood."

Seymour & Wood advanced to the defendants, under the above agreement, the sum of $8,574.66, between the date thereof and the first day of August, 1840, which advances were charged to the defendants in the account rendered to them under the last mentioned date, and by which account a balance of $2,072.67 appeared to be due from the defendants to Seymour & Wood. In that account the defendants were credited with the net receipts from sales of wool and sheepskins, amounting to $13,825.75; and between the 18th day of February and the time of rendering such account, Seymour & Wood had paid out other moneys for the defendants, amounting to about $2,500, which was included in that account.

The defendants acquiesced in that account, as well as the others rendered, until a short time prior to the commencement of this suit.

The complainants put in a replication to the answer. The suit was transferred from the Court of Chancery to the Supreme Court, in 1847.

It is unnecessary to notice any of the proceedings or decisions in the suit, until it was referred to Azor Taber, Esq., to restate the accounts, in 1854. He stated the accounts and made his report, in which he charged the defendants with the $8,574.66, advances made under the agreement of February 18, 1840, and which they claimed he should reject as usurious; and he found due the complainants from the defendants, $738.-45, with interest from the first day of January, 1846. The defendants excepted to that part of the report which charged them with the $8,594.66. The case was afterwards brought to a hearing at a special term of the Supreme Court, where said $8,574.66 was rejected as usurious, and a decree made in favor of the defendants, for $19,902.99. The complainants appealed therefrom to the Supreme Court, at general term in the fifth district, where the judgment at special term was reversed, and a judgment was rendered against the defendants for $738.45 with interest, according to the report of Mr. Taber, and costs. The defendants appealed from that judgment to this court.

The original complainants died during the progress of the action, and the present respondents, who are their administrators, were substituted in their places.

*George F. Comstock*, for the appellants.

*John H. Reynolds*, for the respondents.

BALCOM, J.   The controlling point in the case is, whether the defendants were properly charged by the referee with the $8,574.66, advances the firm of Seymour & Wood made upon the wool and sheepskins, under the agreement of February 18, 1840.   By this agreement, Seymour & Wood were to have a commission of five per cent for selling the wool and sheepskins consigned to them, over and above the charges they should pay out, and also five per cent on the advances they should make upon such property.

The defendants' counsel insists that the provision allowing Seymour & Wood five per cent on such advances rendered the agreement usurious, and void in all its parts.   But I am of the opinion he is mistaken in this, and that the agreement was not, *per se*, usurious.

In *Trotter* v. *Curtis* (19 Johns., 160), the plaintiffs charged a commission of two and a half per cent on the amount of money they advanced to meet the defendant's drafts when he failed to send them produce in time, and interest on the items charged in their account from the time they became due.   Chief Justice SPENCER, in delivering the opinion of the court, said: "There is no pretence for saying that the commission charged by the plaintiff for accepting and paying the defendant's drafts when the plaintiffs had not funds in their hands belonging to the defendant, out of which to pay the drafts when due, was usurious."

In *Nourse* v. *Prime* (7 Johns. Ch., 77), Chancellor KENT said: "Whether the commission for procuring the stock from Philadelphia was high or low, was a question for the parties to settle by their agreement; also, that "there must be an unlawful or corrupt intent confessed or proved, before we

can pronounce a transaction to be usurious." (*Condit* v. *Baldwin*, 21 N. Y., 221.)

In *Suydam* v. *Bartle* (10 Paige, 94), Chancellor WALWORTH said: " It is not, *per se*, usurious for an agent or factor to agree for a reasonable commission, to be paid by the principal, for accepting and paying bills with funds furnished by the latter;" also, that "if the agreement, by its terms, contemplated an advance of money to pay the bills when they became due, so that they should not be returned protested if the drawers did not furnish the means of paying. them at the day, it would still be a question of fact, to be decided by proof, whether two and a half per cent was intended as a mere shift to cover an usurious premium on such advances, or as a compensation for the trouble and expense of accepting and paying the bills by the complainants, as the agents of the drawers."

In *Suydam* v. *Norton* (4 Hill, 211), the agreement was this: "It is also mutually understood and agreed that all the produce sent to New York by Norton, Bartle & McNeil, except lumber, shall be sent to Suydam, Sage & Co., for sale on commission; that they shall at all times be put in funds for their liabilities by the time they become due; and that they shall be entitled to 2½ per cent, commission on all acceptances or advances met otherwise than with produce. It is understood that Suydam, Sage & Co., are to accept, at all times, to the amount of $20,000; that flour and other produce in their hands shall be considered as money at the market price unless limited or ordered held for higher prices. It is also further agreed, that at the expiration of each and every year, all the liabilities and advances of the said Suydam, Sage & Co., for Norton, Bartle & McNeil, shall be paid up, and the account balanced by the said Norton, Bartle & McNeil." And in an action by Suydam, Sage & Co., to recover the sum advanced upon one of the drafts of Norton, Bartle & McNeil, drawn, accepted and paid under such agreement, with interest and two and a half per cent commission, a majority of the court held, that the transaction was not necessarily usurious. The proof in that case, that the charge of a commission on such advances was customary among merchants

engaged in similar business, cannot be regarded as controlling the decision; for if the transaction was usurious, no custom could have made it lawful.

The advances in this case having been made by Seymour & Wood, in doing the business intrusted to them by the defendants, it was a question of fact whether the agreement for a charge of five per cent commission on such advances rendered the transaction usurious. (*Ketchum* v. *Barber*, 4 Hill, 224; *S. C.*, 7 id., 444; *Dry Dock Bank* v. *Am. Life Ins. and Trust Co.*, 3 Comst., 344.)

In *Martin* v. *Feeter* (8 Wend., 533), Chief Justice SAVAGE said: "Usury is a defence which must be strictly proved, and the court will not presume a state of facts to sustain that defence, where the instrument is consistent with correct dealing." (*Sizer* v. *Miller*, 1 Hill, 227; *Merritt* v. *Benton*, 10 Wend., 117; 2 Kern., 223; 2 Hill, 635.)

The defendants did not give any evidence in this case to show that the commission agreed to be paid and charged upon the advances, was unreasonable, or more than a just compensation for the trouble and expense Seymour & Wood were put to in doing the business, aside from the direct commission they had for selling the wool and sheep skins; and as the Supreme Court held the transaction was not usurious, the fact is conclusively settled, that the commission on the advances was not a shift or device to cover an usurious premium thereon, and we must so hold.

But if it were conceded that these advances were made upon an usurious agreement, I am of the opinion they were properly charged to the defendants by the referee, for the reason that such advances were voluntarily paid by them to Seymour & Wood more than two years prior to the time the defendants first claimed the same were tainted with usury. When Seymour & Wood sold wool and sheep skins belonging to the defendants, they applied the avails thereof to the payment of such advances, until the same were fully paid, as they had the right to do, so long as the defendants did not object. (*Van Rensselaer's Executors* v. *Roberts*, 5 Denio, 470; *Allen* v.

*Culver,* 3 id., 284.) In the account stated and rendered by Seymour & Wood to the defendants, August 1, 1840, the latter ·were charged with all the advances in dispute and the commissions thereon, and credited with $13,825.75, net receipts of sales of wool and sheep skins, and they acquiesced in that account; and the defendants were subsequently furnished with other statements of the accounts between them and the firm of Seymour & Wood and their successors in the business, showing that such advances, interest and commissions thereon were paid, in which statements the defendants acquiesced, until it was too late for them to raise any unconscionable objections to the same; they were bound to object to the correctness of the accounts rendered to them within a reasonable time after they received the same, which they did not do. (*Lockwood* v. *Thorne,* 1 Kern., 170; *S. C.,* 18 N. Y., 285.)

In *Dix* v. *Van Wyck,* (2 Hill, 522), BRONSON, J., in delivering the opinion of the court, said: " Contracts affected by usury are not so utterly void but that they may be ratified; and, therefore, if a borrower repay a loan which he might have avoided for usury, he cannot recover the money back again; though under our statute, he may recover the excess which has been paid beyond the legal interest."

The borrower may bring an action under the statute, to recover back usury paid to the lender within one year after paying the same (1 R. S., p 772, § 3), or at common law at any time within six years after paying it. (*Wheaton* v. *Hibbard,* 20 Johns., 290; 2 Seld., 115.)

I am aware that it has sometimes been asserted that an usurious agreement is incapable of ratification. (See 5 Denio, 236.) But the assertion is not strictly true; for when an usurious loan is voluntarily paid, the contract is certainly ratified, except as to the unlawful interest, which, as has been seen, may be recovered back.

The defendants' counsel insists that the payment of the advances in this case, if they are to be regarded as paid, was not voluntary. He relies mainly upon the decision in *Mum-*

*ford* v. *American Life and Trust Company* (4 Comst., 463), to sustain this position. But all that was said in that case, was, that the payment of an usurious loan is not voluntary, if obtained by the lender out of collateral securities in his hands without the concurrence of the borrower; whereas in this the defendants voluntarily placed the wool and sheep skins in the hands of Seymour & Wood after the contract for the advances was made, and the latter sold such wool and skins with the concurrence of the former, and in a course of dealings with the defendants, most of which has never been objected to; and it was also with the concurrence of the defendants that the avails of the wool and sheep skins were applied by Seymour & Wood and their successors in the business, to the payment of the advances in dispute, as well as others. The payment of such advances, therefore, was voluntary, and the defendants were not entitled to recover them back or have the same deducted from the account of Seymour & Wood, or their successors, who brought this suit. .

The point has not been made, that the defendants should have been credited by the referee with the alleged usurious interest upon the advances, independent of the advances themselves; and the claim of the defendants was, that they were improperly charged with the advances, not the interest thereon separate from the same.

For these reasons, I am of the opinion the judgment of the Supreme Court in the action should be affirmed with costs.

SELDEN, J. Where a transaction purports, upon its face, to be a loan of goods or money, and such loan constitutes the entire contract, if a greater sum than seven per cent per annum is reserved as a compensation for the credit given, no extrinsic proof is necessary to establish the usury. Such a transaction is usurious, *per se*. But where the agreement for a loan or advance of money or goods is only part of an entire contract, embracing other matters, it is in all cases a question of fact whether usury was intended. It is never, in such cases, a necessary inference, that the premium was reserved

solely for the forbearance. Even although expressed in terms to be for forbearance, yet, as the extra premium may have constituted part of the inducement to the making of the contract as a whole, an usurious intent is not to be inferred without proof.

The English cases, in which it has been held that agreements by the purchasers of lands or goods upon a credit to pay more than legal interest for the purchase-money, were valid, and the cases in our own courts holding a similar doctrine in respect to charges by commission merchants, of an extra premium for their advances, rest not upon any peculiar doctrine applicable to such cases, but upon the general principle here stated.

In all these cases, it is incumbent upon the party alleging the usury to prove the usurious intent. The affirmative proof given by the plaintiffs in the case of *Trotter & Douglass* v. *Curtis* (19 John., 160), that the two and a half per cent premium charged by them upon their advances was a customary charge, was necessary there, because there was no agreement in that case by the defendants to pay this commission, except such as was to be implied from this proof. But in the case of *Suydam* v. *Westfall* (4 Hill, 211), where it was expressly agreed that the plaintiffs should be entitled to two and a half per cent commision on their advance, proof on the part of the plaintiffs of the reasonableness or customary nature of this charge was wholly unnecessary, although such proof was actually given.

In the present case the stipulation for a charge of five per cent upon advances to be made by the plaintiffs, was part of a written agreement, embracing a variety of conditions other than that relating to such charge, among which were these, viz.: that the plaintiffs should have the selling of the whole of the defendants' wool and skins; that no drafts should be drawn upon them, except as specified in the agreement; and that when the defendants' drafts should fall due, the plaintiffs, if not put in funds should be at liberty to sell the property in their hands at the market price.

On the part of the plaintiffs, it was agreed that they would do the business for a commission of five per cent, including all charges except disbursements; and that they would make certain advances. Now, it is impossible to infer from the face of this contract that the plaintiffs would have agreed to accept the five per cent commission upon sales excluding all charges for storage or other services, without the stipulation for a charge of five per cent upon their advances; and if this stipulation constituted or may have constituted any portion of the consideration upon which they agreed to other portions of the contract, then, of course, the agreement could not be usurious *per se.*

That the commission for advances is five per cent in this case, instead of two and a half, as in the cases of *Trotter and Douglass* v. *Curtis*, and *Suydam* v. *Westfall*, can make no difference. The amount of the commission is of no importance except as it may bear upon the question of fact whether there was an usurious intent; and as no evidence of such an intent, aside from the contract itself, was offered on the part of the defendants, the question of the reasonableness or unreasonableness of the commission, or its accordance with custom, did not arise. It follows, from these views, that the court below was right in allowing the items objected to. This conclusion renders it unnecessary to consider the question whether the defendants were precluded by their acquiescence in the accounts remitted to them by the plaintiff, from setting up the usury. I may, however, say, that I see no reason to differ with the conclusion of the court below on that subject. The judgment should be affirmed.

DENIO, Ch. J., did not sit in the case; all the other judges concurring,

Judgment affirmed.