Stark & Hilliard *vs.* J. N. Sperry and others.

April Term, 1875.

FACTOR AND CUSTOMER—AGREEMENT FOR A LOAN ON PRODUCE.—When an agreement is entered into between a factor and a holder of produce for an advance of money on the produce as part of an entire contract, embracing the storage, safe keeping, and sale of the produce, and the compensation stipulated is greater than the legal rate of interest on the advance, it is a question of fact whether usury was intended, and if relief is sought on the ground of usury the fact must be averred in the bill and established by proof.

CASE IN JUDGMENT.—Thus, where the complainants, as manufacturers of whisky, made a contract with the defendants, factors and commission merchants, for the storage of their whisky and an advance of money thereon, upon certain terms and conditions, the commissions and charges agreed to be paid being more than the legal rate of interest on the advance, it was held, upon a bill filed stating a contract which was not usurious and not established by proof, that the complainants were not entitled to relief, although the agreement proved was for a rate of compensation greater than legal interest on the money advanced.

*J. W. Judd* and *J. A. Cartwright*, for complainants.
*D. F. Wilkin* and *Bate & Williams*, for defendants.

THE CHANCELLOR :—The complainants, being engaged in the manufacture of whisky, and having a large stock on hand, about the 1st of September, 1869, through J. C. Stark, one of the partners, applied to the firm of Sperry & McCrory, then engaged in business at Nashville as factors and commission merchants, and having a large store-house, to ascertain upon what terms they could store whisky with the firm and obtain advances thereon. He was told that it was part of the business of Sperry & McCrory to receive whisky on storage, and that the firm was prepared to make liberal advances on the same. The terms upon which advances were made were explained to him, and he was shown the receipt-book, and the items of the receipt-book explained, and the following card, on the back of this book, was read to him, viz. : " Produce or merchandise held as collateral security for not longer than sixty days, 2 1-2 per cent. *Note:* All goods, wares, or merchandise left for sale on commission, upon which cash advances have been made, are liable to be sold at the end of sixty days unless the owner shall arrange for a renewal, in which case the holder is entitled to a second commission, and so on at the end of each succeeding sixty days, until the goods are sold." The terms upon which the whisky would be received and advances made were then agreed upon, one of these being 2 per cent. for advancing for sixty days, with interest at 6 per cent. per annum in addition. On the 11th of September, 1869, complainants consigned to Sperry & McCrory forty-five barrels of whisky, and received from them a storage receipt, in the printed form which had been shown to Stark, with the rates of commissions and for storage as had been agreed upon, as follows :

Storage, 25 cents per barrel first month ; **15 cents** thereafter ; freight and drayage to be added.

Repairing.

Fire insurance, 1-4 per cent. month.

Cash advanced, 2 per cent. sixty days.

Commission, 5 per cent. for selling and guaranteeing.

20

Tax on sales.

Revenue stamps.

Interest, 6 per cent. per annum.

Advances were from time to time made on this and other shipments of whisky, the whisky not being sold at the end of sixty days, nor for two years, for the reason that the complainants held it at higher than the market rates. The factors seem, from time to time, to have urged sales. In a letter under date of December 13, 1870, they are particularly urgent, and say: "We will inform you that we have held your whisky longer than any commission merchant would in the United States, while our charges, as you know, run up. It ties up our capital so, if we had a few more consignments like yours we could not do anything in the way of a general business. We would advise you to sell it in lots of five or twenty-five barrels, at $2.25 or less, as the expense of carrying it will eat it up."

During this time McCrory had gone out of the firm, and one Foote had become a member, the firm name becoming J. N. Sperry & Co. On the 1st of September, 1871, this firm dissolved, and a new firm of Nelson & Sperry was formed. Complainant Stark was advised of the fact, and that the new firm was willing to pay the advances of the old firm, and give their receipt for the whisky, and he was requested to call and interchange receipts. Accordingly he did call, and the accounts of Stark & Hilliard with J. N. Sperry & Co., up to the 1st of September, 1871, were handed to him, and examined by him. They showed a balance to the debit of Stark & Hilliard of $18,914.22, with 298 barrels of whisky on hand. In the accounts thus presented three rests were made. The first account ran from the 17th of September, 1869, to the 1st of May, 1870, and Stark & Hilliard were charged with the various advances and commissions thereon at the rate of 2 per cent. for every sixty days, and interest on the advances at the rate of 6 per cent. per annum, with commissions on sales, the government tax on sales, storage, and insurance. The

second account commenced where the first ended, and came down to the 29th of September, 1870, and charged Stark &. Hilliard with the balance as per previous account, and commissions on this balance at the rate of 2 per cent. for each sixty days, with other advances and like commissions thereon, and with interest on the first balance and the new advances at the rate of 6 per cent. per annum, and other items of charge as before. The third statement brought the account down in the same way to the 1st of September, 1871. The complainant Stark says in his bill that he remonstrated at this mode of stating the account, but the other witnesses present, three in number—two of them defendants, and the other the book-keeper who made out the accounts—say that he expressed himself satisfied, and agreed that the accounts were made out in accordance with the original agreement. At any rate, after looking over the accounts, he received Nelson & Sperry's receipt to Stark & Hilliard for the 298 barrels of whisky, upon a printed form precisely like the warehouse receipt already copied, but with two changes in the terms, one in the item of storage, which is fixed at 15 cents per month, and the other in the item of commissions for advancing, which are fixed at 1 per cent. per month. The tax on sales is run out in writing, "Gov't tax, 1 per cent." This receipt was dated back to the 1st of September, 1871. At the same time, and dated back in like manner, complainant Stark gave, in the name of his firm, two receipts to carry out the transfer, one to J. N. Sperry & Co. for Nelson & Sperry's warehouse receipt for the 298 barrels, in full for any receipts of J. N. Sperry & Co. held for the same whisky; the other to Nelson & Sperry, in which they acknowledge the receipt from said Nelson & Sperry of $18,914.22, advanced on the 298 barrels of whisky. Shortly after this transaction Nelson & Sperry began to sell the whisky, and the last sales were made on the 2d of July, 1872. On the 5th of July, 1872, they paid Hilliard, for Stark & Hilliard, $5,000, and proposed to pay him the residue of net sales. There

was a dispute between the parties about a charge of Nelson & Sperry of $170.62, commissions on the proceeds of sale of seventy-five barrels, the sale of which seems to have been negotiated by Stark & Hilliard. Hilliard declined to receive the balance of $1,847.78, after deducting the disputed commissions, saying that Stark had made the contract, and he would let him settle the matter. On the same day Nelson & Sperry wrote to Stark, stating the facts, claiming the commissions as due them, but proposing to yield them rather than have any difficulty in the settlement. The answer was this bill, filed on the 14th of August, 1873.

The object of the bill is to surcharge and falsify the accounts of the defendants as rendered to the complainants, and to have them retaken, and upon the following basis:

1st. The complainants insist that the contract between the parties was that complainants were to store a quantity of whisky with defendants, at the price of 25 cents per barrel for one month, and 15 cents per barrel per month for the residue of the time it might remain stored, in consideration of which the defendants agreed "to furnish, loan, or advance" to complainants all the money they wanted at 2 per cent. for sixty days, and then 6 per cent. per annum as long as they wanted it, or until the whisky was sold.

2d. That the charge for insurance was wrong, because the defendants assured the complainant Stark, in order to induce him to store the whisky, that they had a fire-proof house; and, if right, the charge is excessive.

3d. That the loss by leakage is excessive, and the fault of defendants from improper handling.

4th. That the cooperage bills and charges were excessive.

5th. That the transfer of the business to Nelson & Sperry was a trick and fraudulent device to deprive complainants of the benefits of the original contract.

6th. That the charge of 1 per cent. government tax is illegal and wrong, every dollar due the government having been paid before the whisky was stored with defendants.

7th. That the charge of $96.56 for guaranteeing one sale

is wrong, because complainants never authorized a sale on credit.

8th. That the defendants have shown an utter disregard of " the contract, law, equity, and good conscience " in the mode in which they have charged complainants with interest at several rests, as above explained.

9th. That complainants, when informed by defendants that enough whisky had been sold to pay advances and charges, instructed them to sell no more, and, when complainants sold the residue, defendants charged commissions and government tax as in other cases, they being interested in the purchase.

The prayer of the bill is for a general account, in which the defendants will be charged with all whisky sold and money paid, and credited with the advances made, with interest, " according to the terms of the contract," with storage and sums paid for freight, drayage, etc., " and that they be compelled to disgorge the illegal, usurious, inequitable, and unjust charges and ill-gotten gains " made and received.

Of the first seven charges of the bill, as enumerated above, it is only necessary to say that the complainants have failed to establish them, and, on the contrary, the defendants have clearly shown that the complainants are mistaken in each and all of them. The contract in relation to commissions and interest on advancements was not as alleged in the bill, but as hereinbefore set out. The several charges of the defendants were not unauthorized or excessive, nor was the property improperly handled or attended to. And there was, so far as appears, no fraud in the transfer of the business to Nelson & Sperry. The only one of these items about which there can be any doubt is the item of government tax. For the evidence of the United States collector shows that this tax was clearly a privilege tax, being a tax, not on all sales, but on all above $25,000. By charging each of their customers for this tax, whether the sales fell within the $25,000 not taxed, or in the sum of

sales above that amount which was taxed, the defendants are not merely reimbursed the tax, but reimbursed 1 per cent. on sales not taxed. In the absence of any contract, I should hold this charge improper. But the evidence is clear that the complainants agreed to pay the tax, and I suppose the defendants are entitled to it as a perquisite, whether it was actually paid on these particular sales or not.

The ninth item of charge, namely, that defendants are not entitled to commissions on the seventy-five barrels, I think is well taken, not because the defendants would not have been entitled to them if the sales had been made to third persons (for, I am inclined to think, the contract would have authorized the charge), but because the evidence shows that the defendants were interested in the purchase, and they cannot be both buyers and sellers.

The point which was most dwelt upon in argument, and the only one presenting any serious difficulty, is the one raised by the eighth charge of the bill, as enumerated above. And that is whether the accounts as made out are in accordance with the contract of the parties, or violative, in the language of the bill, of " the contract, law, equity, and good conscience." The solution of this question is not free from difficulty.

The contract, as proved by the defendants, was that the defendants should be entitled to charge 2 per cent. commissions on advancements for not longer than sixty days, at the end of which time the merchandise upon which advances are made would be liable to be sold unless the owner arranged for a renewal, in which case the factors would be entitled to a second commission of 2 per cent., and so on at the end of each succeeding sixty days until the goods were sold, and interest at the rate of 6 per cent. per annum on these advances, in addition. The substance of these terms is that, at the expiration of sixty days, the factor would have the right to sell the produce to reimburse himself his advances, commissions, interest, and charges, and the delay of sixty days longer could only be

had by the owner paying 2 per cent. commissions, and interest on the gross amount then due, and so on from sixty days to sixty days. It is not pretended that any new contract was made in this case at the end of the first, or any other term of, sixty days. The defendants assume that the right was implied in the original contract, the terms being distinctly understood. In point of fact the account was not renewed from sixty days to sixty days. There were three rests. The first after an interval of not quite eight months, the second of five months, and the third of eleven months; three times in two years. I do not think the complainants can object to this modification, or that the rests are unreasonable, in view of the transactions, if the contract itself is legal.

The original contract, in effect, secures to the defendants, the factors, as compensation for their services, in the form of commissions and interest, profit on their advances at the rate of 18 per cent. per annum, with monthly rests, or compoundings. Undoubtedly, if the transaction is to be considered as a contract for that rate of interest upon a loan of money, it is clearly usurious. And the question which has been argued by the counsel on both sides, and with great ability, is whether the facts disclose a usurious transaction or a legitimate contract of trade.

On the part of the complainants it is urged that you have a loaning of money, and an agreement for a profit thereon at a usurious rate, thinly disguised under the name of commissions, and a decision of our supreme court, in *Chester* v. *Apperson*, 4 Heisk. 639, a very similar case, settling that such a contract is usurious in this state, however it may be elsewhere.

On the other hand, it is insisted by the defendants' counsel that the authorities clearly establish that a charge, by a commission merchant, of commissions on advances to his customers, in addition to interest, is not *per se* usurious, and can only be made so by showing that it was resorted to as a scheme to avoid the usury laws. *Brown* v. *Harrison,*

17 Ala. 774; *Swilley* v. *Riley*, 18 Ala. 552; *Suydam* v. *Westfall*, 4 Hill, 211; *Trotter* v. *Curtis*, 19 Johns. 160; *Bullock* v. *Boyd*, Hoffm. 294; *Seymour* v. *Marvin*, 11 Barb. 80; affirmed, *Smith* v. *Marvin*, 27 N. Y. 137; *Hale* v. *Daggett*, 6 Cow. 653.

The leading case in this country is *Trotter* v. *Curtis*, 19 Johns. 160, where the supreme court of New York held, through Spencer, C. J., that a charge by a commission merchant for accepting and paying a customer's drafts, and legal interest on the items charged in the account from the time they became due, was not usury. The subject has been considered in all its aspects in the great commercial state of New York, by a series of eminent judges, until it has assumed a definite shape, and culminated in *Smith* v. *Marvin*, 27 N. Y. 137, where the principles which underlie the decisions are admirably grouped by Selden, J. Where a transaction purports on its face to be a loan of goods or money, and such loan constitutes the entire contract, if a greater sum than legal interest is reserved, as compensation for the credit given, no extrinsic proof is necessary to establish the usury. Such a transaction is usurious *per se*. But when the agreement for a loan or advance of money or goods is only part of an entire contract embracing other matters, and the compensation stipulated is greater than the legal rate of interest on the advance, it is in all cases a question of fact whether usury was intended. It is never, in such cases, a necessary inference that the premium was reserved solely for forbearance. Even although expressed in terms to be for forbearance, yet, as the extra premium may have constituted part of the inducement to the making of the contract as a whole, a usurious intent is not to be inferred without proof. The English cases in which it has been held that agreements by the purchasers of lands or goods upon a credit to pay more than legal interest for the purchase money were valid, and the cases in the New York courts holding a similar doctrine in respect to charges by commission merchants of an extra premium for their

advances, rest, not upon any particular doctrine applicable to such cases, but upon the general principle just stated. In all these cases it is incumbent upon the party alleging the usury to prove the usurious intent. The affirmative proof, in *Trotter* v. *Curtis*, that the 2 1-2 per cent. charged was customary, was necessary there because there was no agreement in that case to pay the commissions. Proof of the reasonableness or customary nature of the charge is wholly unnecessary where there is an agreement embracing a variety of conditions other than that relating to such charge ; for, in such case, it is impossible from the face of the contract to say that the factors would have agreed to some of these terms without the stipulation for a charge of their commissions upon advances ; and if this stipulation constituted, or may have constituted, any portion of the consideration upon which they agreed to other portions of the contract, then, of course, the agreement could not be usurious *per se.* The amount of commission is of no importance, except as it may bear upon the question of fact whether there was a usurious intent. And in the absence of evidence of such an intent, aside from the contract itself, the question of the reasonableness or unreasonableness of the commission, or its accordance with custom, cannot arise. The court cannot take judicial notice of what are fair and usual commissions on acceptances paid without funds, and the *onus* is upon the party insisting that such commissions are so high as to amount to usury.

The contract in the case of *Smith* v. *Marvin* consisted of five clauses in writing, and in substance thus :

1st. On condition we (the factors) have the selling of all your wool and skins, we will do it at a commission of 5 per cent., including all charges except such as we paid out.

2d. We will advance or accept on two-thirds value of property in our hands.

3d. We now advance $2,000, in cash, for 90 days, at 5 per cent. commissions.

4th. Provisions for drawing drafts, specifying time, three and four months, and amount.

5th. When your drafts fall due (if not put in funds) we are at liberty to sell the property at the market price and meet the same, *or* if we advance the money to meet the same, charge 5 per cent. on such advances.

The striking analogy between that case, in its facts, and the one now before us, is obvious. And the principles upon which its decision was rested are still more in point. For they are not made to depend upon an exact state of facts in a particular case, but upon the great interests of commerce. And of commerce, on which so much of our modern civilization rests, it may be said now, as the leading merchants said to Louis XIV., when asked what legislation was needed for the benefit of their trade, " let it alone." It is as unwise upon the part of the courts, by judicial legislation, to cramp the great arteries of trade, as it is for the government by its ordinances.

There is nothing in *Chester* v. *Apperson*, 4 Heisk. 639, in conflict with these principles. That was a case where, from the charges of the bill—and the hearing was upon demurrer which admitted the facts as alleged—the loan of money constituted the entire contract, and the stipulation for commissions was coupled with no other conditions, and, so far as appeared, could form the consideration for no other portion of a compound agreement. Money was loaned, for which note with security was taken, and a commission agreed upon for a renewal. A decision upon that state of facts can have no application to a case where the contract confessedly embraced several conditions, coupled with the storage and sale of produce, between a commission house and a regular customer and dealer in such produce.

The bill, moreover, is not based upon the idea of a usurious intent in the contract. The contract alleged in the bill to have been made was entirely free from the semblance of usury, and was that the defendants had agreed to

advance money on produce at 2 per cent. for sixty days, and at the legal rate of 6 per cent. per annum interest thereafter for as long a time as the complainants might choose to retain the money, or until the produce was sold. It would have been a direct contradiction in the bill, after alleging a legal contract, to have charged that the defendants had entered into a corrupt agreement to evade the statutes of usury. There is no such charge. It is only because the complainants have failed to prove the facts upon which the bill is grounded, that the able counsel for the complainants, like skilful military leaders, have undertaken to change their base of operations. But the contract stated in the bill is not usurious, and the contract proved by the defendants is not *per se* usurious, and no basis is laid in the bill, by proper *allegata*, to show that it was resorted to for the purpose of evading the statutes of usury. Any proof on the point would, therefore, have been irrelevant. *Suydam* v. *Bartle*, 10 Paige, 94. There is no evidence, however, even tending to show that the contract was tainted with an unlawful and corrupt intent.

I had occasion to decide, in the case of *Ready* v. *Munday* (1 Tenn. Ch. 453), a decision affirmed by our supreme court at its last term, that, upon a bill filed to open accounts after a settlement by the parties, and receipts passed or notes given on the basis of such settlement, and for the balance found due, the burden is upon the party seeking to go behind the settlement, and that the accounts will not be opened unless the proof clearly shows the existence of error. Being satisfied that there is no error established, under the allegations of the bill, in the settlement of the 1st of September, 1871, between the complainants and defendants, Sperry & McCrory and J. N. Sperry & Co., the bill must be dismissed as to these firms, with costs.

But the defendants Nelson & Sperry admit that they hold a balance of funds in their hands belonging to the complainants, and consent to an account, which the complainants may take accordingly. In taking this account

the defendants will not be allowed commissions or government tax on the seventy-five barrels sold by complainants, for the reasons already given. They will be charged with interest on the balance found on the 5th of July, 1872, for there never has been any formal tender of this balance, nor is it shown that they have always had it ready, set apart from other funds, to be paid when required. The costs of this branch of the case will be divided equally between complainants and Nelson & Sperry.