# Uhlfelder & Co. v. Carter's Adm'r.

*Bill in Equity by Mortgagor for relief against Usury.*

1. *Equitable relief against usury.*—When a mortgagor comes into equity for
relief, on the ground of usury, he is required to pay the principal and legal
interest, and is relieved only from the usury, in the absence of some peculiar
fact or circumstance.

2. *What contracts are usurious.*—Any contract, by which a party secures to
himself more than lawful interest for a loan of money, or for the forbearance
of a debt, is within the statute against usury (Code, § 2092); and in determin-
ing whether it is tainted with usury, the courts will look to the substance and
effect, rather than to the form of the contract.

3. *Same.*—A commission-merchant, accepting bills, or advancing money,
for a customer, may lawfully contract for the usual and reasonable commis-
sions in the course of that business, when the charge is intended as compen-
sation for the risk, trouble, or expense incurred; but such transaction must
be closely watched, and the test of its validity is the intent with which the
charge is made—whether it was intended to compensate for the risk, trouble,
and expense incurred, or to give the creditor additional profit for the use of
his money.

4. *Same.*—There is another class of cases, in which persons engaged in
business requiring the employment of their individual services and money,
and advancing money to a customer, are allowed to stipulate that the borrower
shall do some act by which their business shall be increased or promoted, or
pay them such commissions as they would have earned if he had performed it.

5. *Same.*—The mortgage in this case, on the facts proved, does not belong
to either of these classes of cases, but is a mere cover or device for usury;
purporting to have been given to secure the payment of advances to enable
the mortgagor to make a crop, and binding him to deliver forty bales of cot-
ton (and fifty-four the second year, on its renewal), for storage and sale by the
mortgagee, or to pay, as liquidated damages, one month's storage and a com-
mission of two and a half per-cent. on the value of the quantity not delivered ;
while the proof showed that the mortgagee was a retail merchant in town, not
engaged in the storage of cotton, and knew that the mortgagor, a freedman,
was a man of limited means, who did not raise more than half the stipulated
number of bales, and did not have the pecuniary ability to supply the defi-
ciency by purchase.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 13th May, 1874, by Handy Carter, a freedman, against M. Uhlfelder and Isaac Fraleigh, partners doing business, in the city of Montgomery, under the name of Uhlfelder & Co.; and sought an account of the various transactions had between the parties for a series of years, and equitable relief on the grounds of fraud and usury. The transactions between the parties, according to the allegations of the bill, commenced in 1867, when the complainant raised eight bales of cotton, and sold a part of it to the defendants; and he charged that they defrauded him of at least $40 in making payment and settlement, he being very ignorant, and unable to read or write. In each subsequent year, until 1872, he sold and delivered to them all the cotton that he raised; and the bill repeated the charges of fraud in each settlement. On the 8th January, 1872, he executed to the defendants a promissory note for $800, due the 1st October next afterwards, and a mortgage to secure it, conveying his entire crop of cotton to be raised, with several horses, mules, wagons, farming implements, &c.; in which note and mortgage, his wife and one Robert Patterson, another freedman, who was in his employment, joined with him. On the 24th February, 1873, he executed to said defendants another note and mortgage, in which his wife and said Patterson joined as before. Copies of this note and mortgage were made exhibits to the bill. The note is for $800, payable on the 1st October next after date, and declares "that said amount was obtained from said M. Uhlfelder & Co. *bona fide*, as an advance for the purpose of making a crop, and that without such advance it would not be in our power to procure the necessary teams, provisions, and farming implements to make a crop." The mortgage recites an indebtedness of $800, as evidenced by the note, and then proceeds—

"And whereas, also, in consideration of the promise and agreement hereafter made by the said M. Uhlfelder & Co., we have promised and agreed with them to deliver to them, between the 24th day of February and the 1st day of October next, at their ware-house in the city of Montgomery, fifty-four (54) bales of cotton, of the average weight of 500 lbs., and the average quality of 'low-middlings,' for storage at the usual rates in said city of Montgomery, and for sale for two and a half per-cent. on the amount of sales; in consideration of which said promise and agreement, so made by us, the said M. Uhlfelder & Co. have promised and agreed, and do hereby promise and agree, to provide and furnish good storage for the cotton so delivered, and to sell said cotton for the commission aforesaid; and, in consideration of said promise and agreement made to us by said M. Uhlfelder & Co., we do fur-

ther promise and agree that, in default of delivery to them of said fifty-four bales of cotton, of the average weight and quality as herein agreed, or any part of the same, to pay the said M. Uhlfelder & Co., on the 1st day of October next, as liquidated damages, the usual rates of storage, in said city of Montgomery, for one month, on the number of bales so failed to be delivered, and also an amount equal to two and a half per-cent, on the value, in said city of Montgomery, on the 1st day of October next, of said cotton so failed to be delivered : Now, therefore, in order to secure the payment of said note or writing, the delivery of said cotton for storage and sale, as herein agreed upon, the payment of said stipulated damages in case of default made therein by us, and also to secure the payment of any future indebtedness due and owing by us to the said M. Uhlfelder & Co., whether for future advances, supplies for bagging, rope and ties, the payment of bills and drafts accepted for our accommodation or otherwise,—all of said indebtedness, however, to be due and owing to the said M. Uhlfelder & Co. on the 1st day of October next ; we do hereby grant," &c., " to the said M. Uhlfelder Co., their survivors and assigns, the following described property, to-wit : the entire crop of cotton and corn which may be made and grown during the present year on the plantation in Montgomery county known as the 'Cowley place,' which we are cultivating the present year; also," two horses, two mules, three wagons, one buggy, two cows and a calf, farming implements, &c. The condition of the mortgage was, that if default should be made by the mortgagors in the payment of the money, the delivery of the cotton, or any other stipulation on their part to be performed, the mortgagees might take possession of the property conveyed, and sell the same at public auction, and might become themselves the purchasers at the sale, &c.

The bill alleged that this mortgage, and the preceding one, were obtained from the complainant by fraud and undue influence on the part of the defendants, who took advantage of his ignorance, and of the confidence which he reposed in them; that the mortgages were not read over to him, and he would not have understood their stipulations, if they had been read to him ; that the mortgagees knew his pecuniary condition, and his inability to raise or procure the quantity of cotton stipulated ; that it was never intended he should deliver the number of bales stipulated, but the stipulations were intended as a device or cover for usurious interest in the charges made by the mortgagees; that they had taken possession of all the personal property conveyed by the last mortgage, and had sold or otherwise disposed of the same,

[Uhlfelder & Co. v. Carter's Adm'r.]

and claimed that the complainant was still indebted to them, whereas, on a proper accounting, they would owe him from $500 to $1,000; that he owned personal property worth at least $1,000 when he commenced his dealings with the defendants, all of which had gone into the possession of the defendants, together with the crops raised by him each year; that the defendants had defrauded him in the weight and sale of his cotton, in the charges made against him, in the accounts rendered, &c. He therefore prayed an account of all his dealings with the defendants, a decree against them for any balance found in his favor, and general relief.

The defendants answered the bill, but not under oath, an oath having been waived by the complainant; denying therein, positively and specifically, all the charges of usury, fraud, or undue advantage. The complainant testified, as a witness for himself, as to his pecuniary condition when he commenced trading with the defendants, the quantity of cotton he raised and delivered to them each year, the amount of money and goods he received from them, &c.; and he stated the inducements by which the defendants procured him to execute the mortgages, and the particulars of some transactions in which they had taken undue advantage of him while drunk. He also took the depositions of his wife and said Patterson, whose testimony corroborated his own as to the amount of his crops, the goods received from the defendants, &c. On the part of the defendants, the deposition of M. Uhlfelder was the only one taken, who testified, in general terms, to the fairness of all the transactions between his firm and the complainant; denied that they sought any dealings with him, or used any inducements to get his business; alleged that he first asked them for credit, and they extended it to him for several years without requiring a mortgage, but, as his crop each year failed to pay up his indebtedness, they required a mortgage in 1872, and again in 1873; and that after taking possession of the property conveyed by the last mortgage, they agreed with him upon the value of it, and gave him credit for the agreed value. He alleged, also, that they had furnished the defendant, in each year, a statement of his account with them, which was correct; but he could not recollect any amounts, or particular transactions, and said that his books were lost.

On final hearing, on pleadings and proof, the chancellor held that each of the mortgages was tainted with usury; and he ordered an account to be stated by the register, "as follows: he will charge complainant with $458.52 on the 8th January, 1872, and with all debits against him for advances since made to him by respondents, allowing them interest at

eight per-cent., and commissions of two and a half per-cent. on such advances; and will credit complainant with the proceeds of all cotton delivered by him to them; and he will not allow them credit for commissions on cotton never delivered to them by complainant. He will ascertain, also, the value of the property taken by the respondents under the mortgage, at the time it was so taken, and will allow complainant credit for such value." The register stated the account, and made his report at the next term of the court, showing a balance in favor of the complainant, which, with interest up to November, 1878, the day on which the report was made, amounted to $538.03. The chancellor confirmed the report, to which no exceptions were filed, and rendered a decree in favor of the complainant for $538.03, taxing all the costs against the defendants. The original complainant died before the rendition of the final decree, and the cause was revived in favor of his personal representative. Each of the decrees is assigned as error.

TROY & TOMPKINS, for appellants.

.THOS. H. WATTS, *contra.*   (No briefs on file.)

BRICKELL, C. J.—As the case is presented, it is not necessary to inquire whether the stipulations for the future delivery of the cotton, contained in the mortgages, can be regarded as agreements for liquidated damages, or in the nature of a penalty, to be compensated, if there is a breach, only by the recovery of actual damages. The whole inquiry is resolved into the question, whether these stipulations are not mere devices to obtain a greater rate of interest, for the forbearance of an existing debt, than is lawful. The facts are, that the mortgagor was indebted to the mortgagees, in a sum stated in the mortgages at eight hundred dollars, but which is shown to have been much less in amount; the balance accruing upon dealings for several years. The mortgagor was a farmer of limited means, known to the mortgagees not to have the ability of raising more than fifteen or twenty bales of cotton in any one year, under the most favorable circumstances, and not of ability to purchase cotton to supply any deficiency between the quantity he could raise and that stipulated to be delivered. The mortgagees were retail merchants, not factors, or brokers, or warehouse-men. Into the first mortgage is introduced a stipulation, that the mortgagor shall, on or before the first of the ensuing October, deliver to the mortgagees, for storage and sale, forty bales of cotton; and into the second mortgage a like stipulation is introduced,

for the delivery of fifty-four bales of cotton. In the event of a failure to deliver, the mortgagor stipulated to pay, as *liquidated damages,* one month's storage, and a commission of two and a half per centum on the value of the cotton not delivered.

All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty, bear interest from the day such money or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed. The lawful rate of interest is eight per-centum *per annum ;* and any contract for a higher rate is usurious, and can be enforced for only the principal.—Code of 1876, §§ 2088, 2092. Mortgages, like other contracts, may be impeached for usury, and, at law, the same consequences result, as would follow from taking or reserving it in any other form of contract. When, however, it becomes necessary for the mortgagor to resort to a court of equity for relief, in the absence of some peculiar fact or circumstance, the court will not interfere, unless he pays the principal and lawful interest. Relief from the usury is the extent to which he is entitled in good conscience. 1 Story's Eq. § 301; *Br. Bank of Mobile v. Strother,* 15 Ala. 51; *Hunt v. Acre,* 28 Ala. 580; *Noble v. Walker,* 32 Ala. 456; *Eslava v. Elmore,* 50 Ala. 587.

In determining whether a contract is infected with usury, its substance and effect, not its form, is material. The intent to take or reserve more than lawful interest for a loan of money, or the forbearance of a debt, must exist; and this is deduced from the relations of the parties, their acts contemporaneous with, or subsequent to the contract, and all attendant circumstances. When this intent exists, and such is the substance and effect of the contract, no form or covering which may be given it, no device or shift, can sustain it. A simple loan, or the mere forbearance of an existing debt, which, with the lawful interest, is not put at hazard, but is certainly to be paid, will become usurious, by engrafting upon it stipulations intended for the additional profit of the creditor, and not as compensation for loss or inconvenience he may bear.—*Durham v. Day,* 13 Johns. 40; *Durham v. Gould,* 16 Johns. 367.

A commission-merchant, accepting bills, or advancing money for a customer, may contract for the usual reasonable commissions in the course of that business, when the charge is intended as compensation for the risk, trouble, or expense he may incur.—*Nourse v. Prime,* 7 John. Ch. 69; *Brown v. Harrison,* 17 Ala. 774; *Swilly v. Lyon,* 18 Ala. 552. But such transactions must be closely watched; and in the language

of DARGAN, C. J., in the case last cited, "If the transaction was a device to evade the statute against usury, then the mere form of the contract could not relieve the party seeking to enforce it from the consequences of usury; for mere device or shift can not purge the contract, if it be tainted *with the intent to take* more than *lawful interest by way of loan.*" The *intent* is the test—was it intended to compensate for risk, trouble or expense, incurred at the request of the debtor, or was it intended to give the creditor additional profit for the loan of money, or the forbearance of a debt.

There is another class of cases, in which, in the usual course of business, money and individual services are employed, and when the real purpose is to promote the business, parties have been allowed to enter into contracts for the loan or advance of money, or for the forbearance of an existing debt, engrafting upon the contract a stipulation that the debtor shall do some act by which such business will be increased, or, if he makes default, to pay such commissions as could have been earned if he had performed. Of this class of cases is that of *Pollard v. Baylor*, 6 Munf. 433, to which we are referred by counsel for the appellants; in which it was held, that a commission-merchant, granting indulgences to a debtor, could connect with the contract a stipulation that the debtor should consign him tobacco, to be sold for the payment of the debt, and, if he failed, that he should pay the usual commission for making sales. The case had been previously before the Court of Appeals; and the contract was pronounced usurious, and a deed of trust made for its security void.—*Pollard v. Baylor*, 4 Hen. & Munf. 223. In *Cockle v. Flack*, 93 U. S. (3 Otto), 344, a commission-merchant advanced a pork-packer $100,000, at a stipulated interest, to be employed in the purchase of pork, and it was intended the pork should be consigned to him for sale. A stipulation that, if it was not consigned, a fixed commission should be paid the merchant, it was held, did not necessarily render the transaction usurious—that it was a question for the jury, in view of all the facts, to decide whether the stipulation was a mere device to cover usurious interest, or engrafted upon the advance of the money in good faith, to secure in addition to lawful interest the profits incidental to the sale as commission-merchants. The court said: "It is to be considered that defendants were engaged in a business which was legitimate, and in which both custom and sound principle authorized the joint use of their money and their personal service, increased in value by their integrity and experience. To both these sources they looked for their profits, and they were necessarily limited. It was a necessity of their trade, and it was law-

ful for them, while loaning their money at a specified rate of interest, to stipulate with parties to whom it was loaned for the incidental advantages of acting as commission-merchants for the sale of the property in which the money was to be invested by the borrower. They had the right, also, to require, as a condition of the loan, that it should be invested in such property as would require their services in selling and handling it. . . . We see no reason why the parties could not go a step further, and stipulate that if, for any reason operating in the interest of the borrower, he should prefer to become his own broker or commission-merchant, or to sell at home, he should pay the commission which the other had a right to contract for and recover. . . .. . .
While it was possible to make such a transaction a mere cover for usury, it was at the same time possible that the contract was a fair one in aid of defendants' business—a business in which they were actually and largely engaged, and in which lending was the mere incident, and not the main pursuit." A similar transaction was supported in *Matthews v. Coe*, 70 N. Y. 230; *S. C.* 26 Am. 583; see, also, *Grubbs v. Brooks*, 47 Penn. 485; *Suydam v. Westfall*, 4 Hill, N. Y. 211.

The manifest distinction between these cases and the present is, that the creditors in making the loans, or in the forbearance of the present debt, added only a stipulation which would promote the business in which they were engaged, and which was usual in the course of such business. The loans or advances were to be invested in the purchase of the property, for the consignment of which they stipulated, or the property was to be sold and applied to the payment of the existing debt. In all of them, performance of the contract was stipulated, and the ability of the debtor to keep and perform was not questioned or doubted. Here, performance of the stipulation for the delivery of the cotton was not, and could not have been, contemplated. The inability of the mortgagor to perform was known to the mortgagees, and the payment of the stipulated damages it was intended and expected they would receive, without ever being subjected to the labor, expense, and loss of time, which would have been incident to the storage and sale of the cotton, if it had been delivered. Nor was the storage and sale of cotton upon commission, the business in which they were engaged, and for the increase of which, it is fair to presume, they would employ their capital, whether it was in the form of existing debts, or of money in hand. When an agreement for a loan or advance of money, or the forbearance of a debt, is part of an entire contract, whether usury is intended is, in all cases, a question of fact. *Smith v. Marion*, 27 N. Y. 137. When the entire contract

[Wilcox, Gibbs & Co. v. Henderson.]

indicates that any one of its stipulations must operate to yield the creditor a profit for the loan or forbearance, and not compensation for loss or inconvenience, or for services rendered, or which it was contemplated he would render, it must be pronounced usurious. The mortgagees, in the light of the facts, were, under the guise of a stipulation for the future delivery of cotton for storage and sale, but stipulating for the payment, in addition to lawful interest on the debt due them, of the additional profit of the usual charges for storage, and the commission on the sales. It not being contemplated that the cotton would be delivered, they could as well have stipulated for the payment of the precise sum of money to which the storage and commissions will amount, in addition to the lawful interest. All agreements of this kind must be zealously watched, or the statutes against usury will be nullified.

We are of the opinion there is no error in the record, and the decree will be affirmed.