# Dozier *v.* Mitchell.

*Bill of Equity for Reformation of Mortgage; Cross-Bill for Redemption and Account.*

| | |
|---|---|
| 65 | 511. |
| 107 | 351 |
| 65 | 511 |
| 113 | 117 |
| 114 | 64 |
| 65 | 511 |
| 116 | 586 |
| 65 | 511 |
| 125 | 663 |
| 65 | 511 |
| 132 | 162 |
| 132 | 163 |

1. *Reformation of deed or mortgage.*—A court of equity will reform a deed or mortgage, by correcting a mistake in the description of the land conveyed, when the mistake is clearly and satisfactorily proved, and it can be corrected without injury to an innocent purchaser.

2. *Usury in mortgage.*—A mortgage, given to secure an indebtedness of $438, for moneys and necessaries advanced to enable the mortgagor to make a crop during the current year, and conveying his entire crop of cotton and corn raised during the year, in addition to a tract of land, is not rendered usurious, by a stipulation binding the mortgagor to deliver twenty-two bales of cotton. for storage and sale at two and a half per-cent. commissions, or, in default thereof, to pay, as liquidated damages, one month's storage, at the usual rates, on the number of bales not delivered, and two and a half per-cent. on their market value; the mortgagees being commission-merchants and warehouse-men, and the stipulation being in their usual course of trade, and tending to promote their regular business.

3. *Purchase by mortgagee, at sale under power.*—When a mortgagee becomes himself the purchaser at a sale under a power contained in the mortgage, the transaction is voidable, at the option of the mortgagor, seasonably expressed ; and if the mortgagee re-sells at a profit, the mortgagor may claim the benefit of the advance price, thereby ratifying the transaction, or, at his election, disaffirm and set aside the sale entirely ; but the two remedies are antagonistic, and he can not pursue them both at the same time.

4. *Redemption; charges, and taxes.*—When a mortgagor seeks a redemption, he is required to pay the mortgage debt, with interest, and lawful charges,

which include taxes paid by the mortgagee; and when he asserts his right of redemption, as he may, against a sub-purchaser with notice, the advanced price paid on the re-sale does not enter into the account.

5. *Same; rents, and profits*—In stating the account between the mortgagor and mortgagee (or sub-purchaser with notice), under a bill for redemption, the latter is chargeable, in ordinary cases, with the fair and reasonable rents and profits of the property during his possession, including therein a reasonable occupation rent for the portion of the premises held by himself, and such rents as he received from others, or failed to collect through fraud, willful default, or gross negligence; but the rents are to be estimated upon the value of the property when he took possession, and not upon the increased value arising from improvements made by him.

6. *Same; repairs, and waste.*—The mortgagee in possession is bound to make all reasonable and necessary repairs, and is responsible for any loss or damage caused by his willful default or gross neglect in this regard; and also for voluntary waste committed by him, such as pulling down or improperly removing houses or buildings attached to the freehold.

7. *Same; rents and improvements, as against sub-purchaser.*—A sub-purchaser who bought in good faith, though with notice, and held possession under color of title, is not chargeable, at the suit of the mortgagor seeking a redemption, with rent for more than one year before the commencement of the suit, by analogy to the statute which applies to actions at law (Code, § 2966); and he is entitled to compensation for improvements made, not exceeding the rents charged against him.

8. *Same; purchase at execution sale.*—If the mortgagee, while in possession under his purchase at his own sale, also purchases the property at a sale under an execution in favor of officers of court, against the mortgagor, in which the lands were misdescribed, he can not claim a credit for the amount so paid, as an incumbrance.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 25th March, 1876, by Andrew J. Dozier, against Thweat E. Mitchell, Lehman, Durr & Co., and others; and sought principally the correction of a mistake in the description of a tract of land, as contained in a mortgage executed by said Thweat E. Mitchell to Lehman, Durr & Co., under whom the complainant claimed the land, and an injunction of an action at law brought against him by said Mitchell and others for the land. The mortgage of said Mitchell to Lehman, Durr & Co., which was dated the 25th May, 1870, described the land as "containing three hundred and twenty acres, lying and being situate in Elmore county, known and described as the *Thweat Mitchell Homestead* place, being the north half of section eighteen (18), township seventeen (17), range *nineteen* (19)"; and a copy of this mortgage was made an exhibit to the bill. Lehman, Durr & Co. sold the land under their mortgage, on the 10th January, 1871, when John W. Durr, one of the partners in the firm, became the purchaser, at the price of $550; and they conveyed the land to him by deed dated the 16th June, 1871, in which the lands were described as in the mortgage. On the 1st May, 1871, the lands were sold by the United States marshal, under an exe-

[Dozier v. Mitchell.]

cution against said Thweat E. Mitchell, in favor of "the offi-
cers of the court in bankruptcy," and were bought at the
sale by said John W. Durr, to whom the marshal excuted a
deed, a copy of which was made an exhibit to the bill; and
in this deed, as shown by the exhibit, the lands were de-
scribed as "the north half of section eighteen, township
seventeen, range *nineteen*, situated in *Montgomery* county."
On the 1st February, 1872, Durr sold and conveyed the
lands, by quit-claim deed, in consideration of $800, to the
complainant, and delivered the possession to him; and this
deed, which was also made an exhibit to the bill, described
the lands as lying in range *twenty*. The bill alleged, that the
lands were in fact situated in range *twenty*, and were misde-
scribed, by mistake, in the mortgage to Lehman, Durr & Co.,
the deed from them to John W. Durr, and the marshal's
deed to Durr; that the complainant bought in good faith,
relying on Durr's representations that he had a good title
under the several conveyances above set out; that he did not
discover the mistake in the deeds until long after his pur-
chase, when Mitchell and his brother brought an action
at law against him to recover the land; and that he had
applied to Durr to have the mistake corrected, but had
failed to procure a correction, and could not successfully de-
fend the action at law until it was made.

An answer was filed by Thweat E. Mitchell, admitting the
alleged mistake in the description of the lands; and he
prayed that his answer might be taken as a cross-bill, that an
account might be taken of the mortgage debt, and that he
be let in to redeem. He alleged that the mortgage was more
than paid, excluding the usurious interest which Lehman,
Durr & Co. had charged against him, and offered to pay any
balance that might be found against him; alleged, also, that
Durr and Dozier, during their possession of the lands, had
committed waste, by pulling down buildings, permitting
fences to be destroyed, and failure to cultivate the lands
properly; and he insisted that they should be charged with
the waste thus committed, and also with the annual rents of
the property, which were alleged to be worth $500. Dozier
answered the cross-bill, denying the charges of waste; alleg-
ing that he had fertilized the lands, and had erected valuable
and permanent improvements, and that the lands had no
rental value, except in consequence of the improvements
made and erected by him. Decrees *pro confesso*, on the
cross-bill, were taken against Lehman, Durr & Co., and John
W. Durr.

The mortgage to Lehman, Durr & Co. was signed by said
Thweat E. Mitchell and his wife, and recited an indebtedness

(33)

by them to Lehman, Durr & Co., as evidenced by a promissory note, a copy of which was set out in the mortgage, in these words: " Montgomery, Ala., May 25, 1870. On the first day of September next,' we promise to pay Lehman, Durr & Co., at their office in the city of Montgomery, the sum of four hundred and thirty-eight dollars ($438), with interest from date; hereby declaring, that said [sum] was obtained from said Lehman, Durr & Co. *bona fide*, as an advance, for the purpose of making a crop, and that without such advance it would not be in our power to procure the necessary teams, provisions, and farming implements to make a crop." The mortgage then proceeds, thus: " *And whereas*, also, in consideration of the promise and agreement hereinafter made by the said Lehman, Durr & Co., we have promised and agreed, and do hereby promise and agree, with the said Lehman, Durr & Co., to deliver to them, between the first day of August and the 30th day of September, at their warehouse in the city of Montgomery, twenty-two bales of cotton, of the average weight of 500 lbs., and the average quality of ' low middlings,' for storage at the usual rates in the city of Montgomery, and for sale at two and a half per-cent. on the amount of sales; in consideration of which said promise and agreement, so made by us, the said Lehman, Durr & Co. have promised and agreed, and do hereby promise and agree, to provide and furnish good storage for the cotton so delivered, and to sell said cotton for the commission aforesaid; and we also, in consideration of the promise and agreement aforesaid made by the said Lehman, Durr & Co., do further promise and agree that, in default of delivery to them of said twenty-two bales of cotton, of the average weight and quality as herein agreed on, or any part of the same, to pay the said Lehman, Durr & Co.. on the first day of October next, as liquidated damages, the usual rates of storage in said city of Montgomery, for one month, on the number of bales so failed to be delivered, and also an amount equal to two and a half per-cent. on the value of said cotton so failed to be delivered, in said city of Montgomery, on the 30th day of September next. Now therefore, in order to secure the payment of said note or writing, the delivery of said cotton for storage and sale, as herein agreed upon, the payment of said stipulated damages, in case of default made therein by us; and also to secure the payment of any future indebtedness, due and owing by us to the said Lehman, Durr & Co., whether for future advances, supplies of bagging, rope and ties, the payment of bills and drafts accepted for our accommodation or otherwise,—all of said indebtedness, however, to be due and owing to the said Lehman,

Durr & Co. by the 1st day of September next; we do hereby grant, bargain and sell," &c., " the entire crop of cotton and corn which may be made and grown during the present year, on the plantation in Elmore county, known as the *Thweat Mitchell place*, which we are cultivating the present year; also, three hundred acres of land," describing it as above stated. The mortgage contained a power of sale, if default should be made in the payment of the note, the delivery of the cotton, or payment of the stipulated damages, &c.

On final hearing, on pleadings and proof, the chancellor expressed "grave doubts as to whether the original bill contains equity;" citing *Haley v. Bagley*, (37 Mo. 363), and *Schwickerath v. Cooksey* (53 Mo. 75); but he declined to dismiss the bill for the want of equity, as the question had not been raised, and the alleged mistake was admitted by Mitchell, the complainant in the cross-bill. He held, also, that the cross-bill contained equity, and that Mitchell was entitled to a redemption and account; and having rendered a decree reforming the mortgage, but refusing any relief as to the alleged mistake in the marshal's deed to Durr, he ordered a reference to the register to state an account, under the following instructions : "The register will ascertain how much of the debt described in the mortgage was for cash, or supplies furnished to Mitchell by Lehman, Durr & Co., and will charge Mitchell interest on such sum. He will not consider damages for Mitchell's failure to deliver cotton. He will allow complainant credit for taxes paid by him, and for the cost of necessary repairs, and the cost of valuable and permanent improvements put upon the land by him before the action at law was commenced to eject him, allowing interest on such expenditures. On the other side, he will charge complainant with the value of all improvements removed by him, if any such have been removed, and with the value of improvements which he has allowed to become worthless for want of repairs ; and with any damages to the place, which have resulted from gross negligence on his part; and with interest on such sums. He will ascertain, also, the value of the annual occupation rent, when the same was occupied by the complainant, and the amount of rent received by complainant, or which he might have received by diligence, when the land was leased by him to others. He will apply the annual rents, first, to the payment of interest due on the mortgage, and other sums due to complainant, and next to the satisfaction of the principal so due."

From this decree Dozier appeals, and here makes the following assignments of error: 1. The court erred in holding that the mortgagor was entitled to an account. 2. In direct-

ing the register, in the statement of the account, not to consider damages resulting from Mitchell's failure to deliver cotton. 3. In directing that the complainant should be charged with the value of any improvements which he allowed to become worthless for want of repairs. 4. In failing to instruct the register, in the statement of the account, to ascertain the amount of the mortgage debt according to the contract between the parties as expressed in the mortgage. 5. In failing to limit the complainant's liability to account for rents and profits to a period not exceeding one year before the filing of the cross-bill, upon which said account was ordered. 6. In directing an account of rents and profits, without limit as to time, against the complainant, who held adversely, and in good faith. 7. In directing the register to charge the complainant with the value of the occupation rent of the premises during the time they were occupied by him. 8. In directing the register to charge the complainant with the value of the rent he might have received by diligence, when the premises were leased by him to others. 9. In directing the register to charge the complainant with the full value of such rents, without limitation of the value exclusive of any permanent improvements that might have been made by him. 10. In directing the register to charge the complainant with interest on the value of the improvements which had become worthless for want of repairs, or which had been removed by him, and on the amount of damage to the place resulting from gross negligence. 11. In excluding from the account the amount paid for the land at the sale by the United States marshal, and the interest thereon.

TROY & TOMPKINS, for appellants.—The purchase by Durr, at the sale under the mortgage, was only voidable; and the sale will not be set aside, as against Dozier, who purchased from Durr in good faith, and for valuable consideration. *Dexter v. Shepard*, 117 Mass. 480; *Burns et al. v. Thayer*, 115 Mass. 89. If Mitchell is entitled to redeem at all, as against Dozier, he should be required to repay the sum paid by the latter to Durr, with interest. If he claims the benefit of the re-sale by Durr, as he may (*Cunningham v. Rogers*, 14 Ala. 147), this is an affirmance of the sale, and he can not at the same time redeem by simply paying the mortgage debt, with interest. The stipulation in the mortgage for the payment of liquidated damages, on account of the failure to deliver the cotton, was supported by a sufficient consideration, and is valid.—*Pollard v. Baylor*, 6 Munf. 433 ; *McGehee v. Walker*, 15 Ala. 183; *Erwin & Williams v. Erwin*, 25 Ala.

236. The mortgage is not usurious on its face, and the court erred in excluding the stipulated damages from the account.—*Cockle v. Flack,* 93 U. S. 344; *Suydam v. Westfelt,* 4 Hill, 211; *Pollard v. Baylor,* 6 Munf. 433; *Seymour v. Mervin,* 11 Barbour, 80–85. Even if there was usury in the contract, the sale under the mortgage amounted to a payment, and it can not be set up.—*Perkins v. Conant,* 29 Illinois, 184. The complainant was not, in any event, liable for rents not collected, unless the loss resulted from willful default and gross negligence.—4 Kent's Com. § 166; 2 Jones on Mortgages, § 1123; *Hogan v. Stone & Co.,* 1 Ala. 496. The rents must be estimated on the value of the property in the condition in which it was when the complainant took possession of it, and not on the increased value arising from the improvements made by him.—*Bell v. Mayor,* 10 Paige, 49; 4 Kent, § 166. The complainant could not be charged with the value of buildings which have become worthless from the natural effect of age and decay.—*Hughes v. Williams,* 12 Vesey, 495; *Dexter v. Arnold,* 2 Sumner, 108.

GUNTER & BLAKEY, *contra.*—The decree gives the complainant all he asked in his bill—a reformation of the mortgage, so that he could defeat the action at law; and he can not complain because he was required to do equity, in accordance with a fundamental principle on which a court of equity grants relief.—*Denby v. Mellgrew,* 58 Ala. 147. When the court entertains jurisdiction of such a bill, the whole matter is opened, and the defendant may set up any rights he has.—*Provost v. Robman,* 21 Iowa, 419; *Blodgett v. Hobart,* 18 Vermont, 414; *Calkins v. Calkins,* 3 Barbour, 306; 20 N. Y. 148. To reform the mortgage simply, under the facts disclosed, would work great injustice to the rights of the mortgagor.—*Schwickerath v. Cooksey,* 53 Mo. 75; *Haley v. Bagley,* 37 Mo. 363; 18 Vermont, 414; 6 Ohio St. 459. The cross-bill was, in effect, a bill to redeem; and Mitchell had the right, under it, to set up usury in the mortgage debt.—2 Lead. Cases in Equity, 4th Amer. ed., 1954. The mortgage shows usury on its face, and the charge of usury is admitted by the decrees *pro confesso* against the mortgagees. Dozier claims under the mortgagees, by quit-claim deed, and with notice of the mortgage; and he occupies no better position than the mortgagees would. If the stipulation for the payment of liquidated damages is to be regarded only as a penalty, a court of equity could grant relief against it.—2 L. Cas. Eq. 1954. The liability of a mortgagee in possession for rents, is well established.—*Powell v. Williams,* 14 Ala. 476; 2 Lead. Cas. Eq. 1979, 4th Amer. ed. So, also, of his liability for

waste committed or suffered.—*Sandon v. Hooper*, 6 Beavan, 246; 2 L. C. Eq. 1980. The complainant was not an adverse holder, and can not claim the benefit of the statute which limits the liability of adverse holders for rents in an action at law.—Code, §§ 2966, 2951.

SOMERVILLE, J.—It is settled law, that where the proof of mistake is clear and satisfactory, as to a misdescription of land conveyed by deed or mortgage, equity will reform the instrument, so as to correct the mistake, where it can be done without injury to an innocent purchaser without notice.—*Mills v. Lockwood*, 42 Ill. 111.

Tested by the principle established in *Uhlfelder v. Carter's Adm'r*, at the last term (64 Ala. 527), the mortgage given by Mitchell to Lehman, Durr & Co., was not usurious, and the chancellor erred in ordering the register to exclude from the account to be taken by him the amount, designated as liquidated damages, to which the mortgagees became entitled by Mitchell's failure to deliver the cotton agreed by him to be delivered under the terms of the mortgage. The question of usury is one of *intent*, and is to be determined by the substance and effect, rather than by the mere form of the contract. The *onus* is upon the party seeking to impeach the transaction, to prove the guilty intent, and to show that the contract is really a mere loan, assuming the form of a device for the cover of usury.—7 Wait's Actions & Def. p. 622, § 14.

The stipulation made in this case, for commissions and storage on the cotton agreed to be delivered by the mortgagor to the mortgagees, Lehman, Durr & Co., was, under the circumstances, lawful and *bona fide*, and therefore free from usurious taint. The mortgagees were engaged in the commission business, and were also warehousemen. The stipulation in question was in their usual course of trade, and tended to promote their regular business. The money loaned was advanced to make a crop for the current year, and it is evident that the actual delivery of the cotton was contemplated. In these particulars, this case is entirely dissimilar to that of *Uhlfelder v. Carter's Adm'r*, *supra*, and its validity is fully sustained by the authorities. *Cockle v. Flack*, 93 U. S. (3 Otto), 344; *Matthews v. Eve*, 70 N. Y. 239 (*S. C.*, 26 Amer. Rep. 583); *Grubb v. Brooke*, 47 Penn. 485.

Durr, being one of the mortgagees, could not purchase the trust estate at his own sale, without the consent of the mortgagor. The transaction was voidable, at the option of the mortgagor, seasonably expressed. It could be either ratified

[Dozier v. Mitchell.]

or disaffirmed.—2 Brick. Dig. p. 500, §§ 156–166.  So, like-wise, of the re-sale by Durr to the appellant, Dozier, which was effected at a profit on the original purchase.  Mitchell could either hold Durr to account as a trustee, as making the re-sale for his benefit, and thus have it ratified, so as to claim the profit or advanced price ; or he could ask for the sale to be disaffirmed and set aside entirely.  He must have pursued either the one or the other of these alternative courses, which were antagonistic, and he could not pursue both simultaneously.—*Cunningham's Adm'r v. Rogers*, 14 Ala. 147 ; *Brackenridge v. Holland*, 2 Blackf. (Ind.) 377 ; *S. C.* 20 Amer. Dec. 123.

The mortgagor, Mitchell, had the right to redeem only by the payment of the entire mortgage debt, with lawful interest and charges.  The re-sale by Durr to Dozier, under such circumstances as to charge the latter with notice of exist-ing equities, could not defeat or embarrass this right.  The profits paid by Dozier to Durr do not enter into the ques-tion of redemption.—2 Jones on Mortg. §§ 1070, 1038, 1075 ; *Glidden v. Andrews*, 14 Ala. 733.  But the taxes paid by the mortgagee on the mortgaged premises are properly included in such charges.—2 Jones Mort. § 1134.

In taking the account between the mortgagor and the mortgagees, or any purchaser from them with notice, the latter would, in ordinary cases, be accountable for fair and reasonable rents and profits of the mortgaged estate from the time of actually entering possession.  This would include such rents as they may have received from others, or failed to collect by fraud, willful default, or gross negligence ; also, a reasonable occupation rent for any portion of the premises held by them under the mortgage.—*Powell v. Williams*, 14 Ala. 476 ; 3 Lead. Cas. Eq. (Hare & Wall.), * 891–892 ; 2 Jones Mort. § § 1123–24 ; *Barron, Meade & Co. v. Paulling*, 38 Ala. 294.

The mortgagee in possession is bound to make all reason-able and necessary repairs, and is responsible for any loss or damage occasioned by his willful default, of gross neglect in this regard.  He is also liable to account for voluntary waste, or such as is actually committed by him while per-sonally in possession.—2 Jones on Mortg. §§ 1123, 1126. This would, of course, include the pulling down or impro-per removal of houses or buildings attached to the freehold. *Sandon v. Hooper*, 6 Beav. 246 ; 3 Lead. Cas. Eq. (Hare & Wall.) * 892 ; *Guthrie v. Kahle*, 46 Penn. St. 331.

In estimating the rents, they are not to be charged upon the increased value of the property arising from improve-ments, but upon the estate as it was when it came into the

hands of the mortgagees prior to such improvements.—4 Kent's Com. p. 166 ; *Bell v. The Mayor, &c.,* 10 Paige, 49 ; 2 Jones Mort. § 1127.

This case is, however, governed by section 2966 of the present Code of 1876, which provides, that " persons holding possession under color of title, in good faith, are not responsible for damages or rent for more than *one year* before the commencement of suit." Although strictly applicable to suits at law, it has been applied, by analogy, to cases in the nature of equitable ejectment, like the present. Dozier purchased from Durr in good faith, and held possession under color of title. Hence, he is not chargeable with rent for more than one year before the commencement of the suit.—*Dudley v. Witter,* 46 Ala. 664. And he was entitled to compensation for improvements made, but not beyond the rents charged against him.—*Ormond v. Martin,* 37 Ala. 598; *Horton v. Sledge,* 28 Ala. 478 ; 2 Jones Mortg. § 1128.

There was no error in disallowing the amount paid by the mortgagees for the purchase of the land made at the United States marshal's sale. The levy upon the lands so fatally misdescribed them as to convey no title, and the rule of *caveat emptor* applied. To allow this amount thus paid as an incumbrance, would be tantamount to effecting a collateral reformation of the marshal's deed, without proper pleadings in a case seeking such relief.

The decree of the chancellor is reversed, and the cause remanded, that the account may be taken in accordance with the principles announced in this opinion.