# Woolsey & Sons *v*. Jones & Bro.

*Action for Conversion of Cotton.*

1. *Mortgage on crop; what subject to; charge as to burden of proof.* Where in an action for conversion of cotton claimed under a crop mortgage, there was conflicting evidence as to whether the cotton claimed was part of the mortgagor's crop, an instruction that it was incumbent on the plaintiffs to satisfy the jury that the cotton in question was raised by the mortgagor, was proper.

2. *Same.*—In an action for conversion of cotton claimed under a mortgage on the crop raised by mortgagor, an instruction that if the jury found that the cotton was raised on land rented by the mortgagor, but by him leased to another in payment of labor, it would not be subject to the mortgage, was proper; and the fact that the mortgage also transferred the mortgagor's rents, was, in the absence of evidence that any rent was due him and unpaid, immaterial.

3. *Date of mortgage.*—A mortgage not dated, given to secure a note dated April 18, 1884, bearing interest on its face "from this date" and incorporated in the mortgage as a part thereof and referred to therein as "bearing interest from this date," imports the date of its execution to be coincident with that of the note.

4. *Usury; commissions.*—Where, in a mortgage, the mortgagor contracts to pay more than 8 % interest to the mortgagees who are commission merchants, and the mortgage contemplates a sale of the property by the mortgagees, irrespective of a sale for default of payment, such mortgage does not on its face import usury. The *onus* of proving this a device or guilty intent to evade usury laws is on the party assailing its legality.

5. *Commission.*—The word "commission" implies a compensation to a factor or agent for services to be rendered in making a sale, or otherwise.

6. *Practice; statement of absent witness; charge.*—A charge, that "the

[Woolsey & Sons v. Jones & Bro.]

statement introduced (under the rule of practice), by defendants as to what H. (an absent witness) would swear if he were present, must be taken by the jury as though H. were present and swore to it before the jury," is proper.

APPEAL from the City Court of Montgomery.

Tried before Hon. T. M. ARRINGTON.

This action was brought by appellants for the alleged conversion by appellees of cotton upon which appellants claimed to have a prior mortgage given by one Houser. The facts concerning these mortgages, and by whom the cotton was raised, and the question of usury, appear in the opinion. The court below gave, at the request of appellees, the following charges, to the giving of each of which appellants excepted:

1. "The statement introduced by the defendants as to what Houser would swear, if he was present, must be taken by the jury, as though Houser were present and swore to it before the jury."

2. "It is incumbent on the plaintiffs to show to the satisfaction of the jury, that the cotton in controversy was raised by Houser, and unless this is done by them, the plaintiffs can not recover."

3. "If the jury find that the note and mortgage of May 1st, 1884, was given on a consideration and contract to pay more than eight *per cent. per annum* on such consideration, then the plaintiffs can not be regarded as a *bona fide* purchaser or creditor as to said mortgage and debt of May 1st, 1884, as against defendant's mortgage."

4. "If the jury find that the cotton in controversy was grown on land that Houser had rented from Dobson, and which he (H.) had turned over to the daughter of Sophie Jones in payment for their labor on H.'s land, then such cotton would not be subject to either of plaintiffs' mortgages."

TROY, TOMPKINS & LONDON, for appellants, cited 1 Ala. 632; 17 Ala. 774; 18 Ala. 552; 7 Johns. Ch. 69, *Nourse v. Prince;* 64 Ala. 527; 65 Ala. 511; 7 Wait's Ac. & Def. 518; 60 Ala. 214; 60 Ala. 537.

GRAVES & BLAKEY, and WILLIAMSON & HOLTZCLAW, *contra.*

SOMERVILLE, J.—The first charge given by the court, at the request of the defendant, asserted that the statement

[Woolsey & Sons v. Jones & Bro.]

introduced by the defendant, as to what the absent witness
would have sworn, had he been present, should be taken by the
jury as if the witness were actually present, and had testified
in person to the facts before the jury.   This was unquestion-
ably correct, and any other view of the law would practically
nullify the 16th Rule of Practice relating to continuances in
*nisi prius* causes.—*Crawford v. The State*, 44 Ala. 382.

2.   The two mortgages executed to the *plaintiffs* by Houser,
in January and May of the year of 1884, which are claimed
to confer a lien on the cotton in controvesy in favor of plain-
tiffs, can be construed to cover only the crop of the grantor
himself, or such as might be raised by him, or his employees,
on land in which he had some interest or estate.   The lan-
guage of these instruments clearly imports this construction,
and is not susceptible of any other meaning.   The mortgages
can not, therefore, embrace within their terms cotton derived
from any other source.   The second and fourth charges are,
in our opinion, free from error when construed in reference
to the evidence, which was conflicting on the point as to
whether the cotton in controversy was a part of the crop
raised by Houser, or whether he obtained it by purchase from
one of the tenants for advances made during the year.   If
the jury were satisfied that the latter view was a correct
inference from the evidence, the lien of the plaintiffs' mort-
gages would no more attach to the cotton, than if the mort-
gagor had gone into the market and purchased it from a
stranger.   The land leased to the tenant Sophie Jones was
her own for the purposes of occupancy and cultivation, and
was, to this extent, no longer the land of Houser.   One of
the mortgages, it is true, transfers the "rents" of the mort-
gagor, but there is no evidence tending to show Houser had
any rents due him and unpaid.

3.   The mortgage executed by Houser to *defendants* also
covers his entire crop of cotton grown during the year 1884,
on the plantation cultivated by him in Autauga county—the
same crop that was mortgaged to plaintiffs.   One of the
questions in the case, is the relative priority of the lien cre-
ated by this instrument and that created by the plaintiffs'
mortgages, to which we have above alluded.   This inquiry
arises only on the supposition, that the cotton delivered to
the defendants constituted a portion of this crop.

It is insisted, that although defendants' mortgage was not
recorded until May 14th, 1884—subsequently to the plain-
tiffs'—it was executed on April 18th of the same year, prior

in date, and that the plaintiffs are chargeable with notice of its existence. This instrument in its concluding clause is without date—the date being left blank. But it is given to secure a note, dated April 18th, 1884, which bears interest on its face "from this date." This note is incorporated in the mortgage, as a part of it, and the mortgage itself, in referring to the note, describes it as bearing "interest from *this* date"—which means by necessary implication the date of the execution of the mortgage. The note and mortgage were, therefore, executed on the same day—April 18th, 1884—and this is imported by a careful inspection of the face of the papers.

4. The ground upon which it is insisted that the plaintiffs were chargeable with notice of this unrecorded mortgage is, that their mortgage debt was usurious, and, under the principle settled in *McCall v. Rogers*, 77 Ala. 349, and other cases running back to *Saltmarsh v. Tuthill*, 13 Ala. 390, decided in 1848, that the holder of a usurious mortgage can not be regarded as a *bona fide* purchaser without notice, and is not protected against prior incumbrances or secret equities, of which he has no actual or constructive notice. If the mortgage debt was usurious, this contention is necessarily correct.—*LeGrand v. Eufaula Nat. Bank*, 81 Ala. 123, 131.

5. The test of usury, however, is not always the mere retention of more than the lawful rate of interest in making a loan. Usury is commonly defined to be the taking of more for *the use of money* than the law allows. The statute makes all contracts usurious, which are for the payment of interest upon the loan or forbearance of goods, money or things in action, at a higher rate than eight per centum per annum. Code of 1886, § 1754. If an extra and reasonable amount be charged for some incidental service, expense or risk assumed by the lender, or his employees, this is not for the use of the money—it is not *interest*—and can not render the contract of loan usurious, unless the transaction be a shift or device intended in substance and legal effect to cover a usurious loan. Contracts to pay the usual commissions to a commission merchant, for making advances of money and sales of products consigned, are of this character, and, though often liable to suspicion, are not necessarily usurious. The *onus* of proving them such is cast on the party seeking to impeach their legality, and this he can do only by showing the guilty intent to evade the laws against usury.—*Uhlfelder v. Carter*, 64 Ala. 527, and cases there cited; *Nourse v.*

*Prince*, 7 Johns. Ch. 69; s. c., 11 Amer. Dec. 403, *note*, 416. In *Dozier v. Mitchell*, 65 Ala. 511, the borrower, who was a farmer, agreed to deliver to the lenders, who were commission merchants and warehousemen, twenty-two bales of cotton for storage and sale, and in default of delivery to pay reasonable storage and commissions on the value of the cotton, by way of liquidated damages. It appearing that the actual delivery of the cotton was contemplated, and no intent being shown to make the transaction a cover for usury, the contract was sustained as one designed to compensate the lenders for risk, trouble and expense incurred by them in their business as warehousemen and commission merchants. That case is closely analogous to the one in hand. The suggestion that the agreement in this case imposed no obligation on the mortgagees to perform the services by which the commissions were earned is unsupported. The phrase—"to be *sold* by them, and the proceeds to be applied to the above mentioned liabilities"—which occurs in the instrument, clearly has reference to the sale at any time of the cotton by the plaintiffs as commission merchants, irrespective of the power of sale in the mortgage, which is an additional and supplementary power. The word "commission," moreover, implies a compensation to a factor or other agent for services to be rendered in making a sale or otherwise. The acceptance of this agreement by the mortgagees bound them to all the duties expressly or impliedly imposed by its terms, as fully as if they had signed it.

6. The question of intent is commonly one for the jury, where it does not follow as a clear deduction from undisputed facts, or is not imputed by the mere construction by the court of a written instrument, unaided by extrinsic evidence, when it then becomes a question of law to be determined by the court. The latter is the case, where the contract on its face and by its own terms *per se* imports usury.—*Davis v. Garr*, 6 N. Y. 124; s. c., 55 Amer. Dec. 387; *note*, p. 392–3; *Uhlfeder v. Carter, supra.*

The third charge given by the court at the request of the defendants was in conflict with these views in making the retention to retain more than eight per cent. per annum by the lender the sole test of an intent to make a usurious loan. The contract did not import usury on its face, and the burden was cast on the defendants to show it was vitiated by the requisite illegal intent, which was a question proper to be submitted to the jury. This inquiry was, by the third

[Steiner & Sons v. Ray et al.]

charge, improperly withdrawn from the consideration of the jury.

The judgment is reversed and the cause remanded.